93 N.W.2d 606 (1958)
In the Matter of the ESTATE of Mary L. HANSON, Deceased.
Walter H. BALDENECKER, Executor of the Estate of Florence L. Baldenecker, Deceased, and Helen L. Tolby, Appellants,
v.
Sylvia May BEHRENS, Executrix, Respondent.
No. 9673.
Supreme Court of South Dakota.
December 20, 1958.
Rehearing Denied January 20, 1959.
*607 Mundt & Mundt, Sioux Falls, for appellants.
Henry C. Mundt and Acie W. Matthews, Sioux Falls, for respondent.
SMITH, Judge.
Objections to the supplemental account of Sylvia May Behrens, executrix of the will of Mary L. Hanson, deceased, were made and filed in the County Court of Minnehaha County, By Walter H. Baldenecker, as executor of the estate of Florence L. Baldenecker, deceased, and by Mary L. Tolby. After hearing, the account was approved and allowed except as to some minor items. The objectors appealed to the circuit court and after hearing de novo the account was again approved and allowed. The objectors have appealed to this court. A lengthy history is essential to an understanding of the contentions of the objectors. The matters in difference involve a residence property described as follows: north 64½ feet of the NE¼ of Block 14, Sherman's Addition to Sioux Falls, Minnehaha County, South Dakota. To avoid useless repetition of this legal description, we propose, in quoting from exhibits, to substitute therefor the word "(description)".
During the last years of her life Mary L. Hanson lived with her daughter, Sylvia At the time of her death, March 30, 1947, they lived in Sioux Falls. She was survived by three daughters, Florence L. Baldenecker, Helen H. Tolby and Sylvia May Behrens. In her will she provided that they should share equally in her property. The daughters were together in the Sioux Falls home on the day of her death. During that day Sylvia revealed to her sisters that her mother had advanced $5,750 or $5,850 which had gone into the purchase of the Sioux Falls residence, title to which had been taken in the name of their mother and Sylvia as joint tenants. After this disclosure Sylvia, in substance, promised her sisters that upon a sale of the property she would pay one-third of that amount to each of them if the two sisters would agree to bear one-half of any loss she suffered in such sale. She stated she would put that promise in writing if they desired. They assented.
The petition for the probate of the mother's will, signed by Sylvia, was filed on April 8, 1947 and in describing the property of the testatrix included these words, "An interest in (description) valued at $5850." The inventory and appraisement of the property of the testatrix executed by Sylvia included words as follows, "An interest in (description) (Subject to deed with a survivorship clause to Sylvia May Behrens) $5750."
On July 2, 1947 Sylvia instituted a proceeding in the circuit court of Minnehaha County in which a judgment was ultimately entered terminating the life estate of Mary L. Hanson in the above described Sioux Falls property. Notice of hearing on the petition seeking that relief was mailed to Florence and Helen. Counsel for Sylvia enclosed with said notice an instrument executed by Sylvia reading as follows:
 "Statement
"To Florence L. Baldenecker,
Des Moines, Iowa,
 and
Helen L. Tolby
Tolleson, Arizona.
"This is to certify that Mary L. Moody-Hanson had an interest in the (description) in the amount of Fifty eight hundred and fifty dollars ($5850.00), and *608 "That the undersigned will pay a one third (1/3) of said amount to each of the above named parties upon the sale of said property, less one half (½) of the loss, if any, when sale is made of the property in question, each to share a one half(½) of said one half (½) loss if any.
"Dated this 30th day of June A.D. 1947."
The final account and petition for distribution of the executrix, Sylvia, was filed on October 26, 1949. In the listing of the residue of the property to be distributed, she included these words, "Amount due from Sylvia May Behrens by reason of the interest which Mary L. Hanson had in (description) and subject to deed with a survivorship clause to Sylvia May Behrens, amounting to $5750."
After receiving a copy of this final account, the sisters Florence and Helen, respectively filed with the county court their signed statements reading as follows: "To the Judge of the County Court, in and for said County of Minnehaha, South Dakota: I, the undersigned, having received a copy of the Final Account and Petition for Distribution from the Executrix, Sylvia May Behrens in the above entitled estate, and having carefully examined the same, hereby consent to have the Court enter an Order approving said Final Account and Petition for Distribution, and ordering that the Executrix make distribution of the balance of said estate."
The final decree, from which there has been no appeal, was entered on November 8, 1949. The description of the residue of the estate contained therein included the following: "Amount due from Sylvia May Behrens by reason of the interest which Mary L. Hanson had in (description) and subject to deed with a survivorship clause to Sylvia May Behrens in which life estate has been terminated and title is now vested in Sylvia May Behrens, amounting to $5750.00 (Sylvia May Behrens agrees to pay to Florence Baldenecker and Helen L Tolby each a one third of said $5750.00 upon the sale of the aforesaid property, less one half of the loss if any when sale is made of the property in question, each to share one half of said one half loss, if any.)"
Sylvia remains undischarged as the executrix and in charge of the estate. In September 1954 her sisters filed a petition in county court praying that she be required to account and make distribution. Thereafter, and before the county court had acted on that petition, Sylvia instituted an action in the circuit court in which she sought to quiet her title to the Sioux Falls residence against the claims of her sisters. Before trial of that action, or disposition by the county court of the petition for an accounting, Sylvia received an offer for the Sioux Falls property which all parties deemed to be advantageous. Thereupon they executed a stipulation authorizing the sale, placing the purchase price, less a sum then distributed to each sister, in escrow, agreeing the action should proceed without prejudice to the claims made by either party therein, and for an accounting after the issues therein had been decided.
The answer of the sisters in the action to quiet title questioned the jurisdiction of the court and asserted the issues were res adjudicata in virtue of the final decree in the estate of Mary L. Hanson. After a trial the circuit court, among others, adopted findings which we have renumbered as follows:
"(1) That Mary L Hanson * * * re-invested either $5750 or $5850 * * * in the (description) with title to be held by Sylvia May Behrens, the plaintiff, after the decease of Mary L Hanson, according to the terms of the deed to said property, upon the understanding, however, that 2/3rds of said $5750 or $5850 so invested was to be held in trust for the defendants, Florence L. Baldenecker and Helen L Tolbysisters *609 of the plaintiff, and to be paid to them by plaintiff, after the decease of said Mary L Hanson, unless paid back to Mary L Hanson, prior to her decease, when said $5750 or $5850 was to be divided equally among plaintiff and defendants as per the Last Will and Testament of said Mary L Hanson. That the total purchase price of said Sioux Falls, South Dakota property including furniture, was $9250."
"(2) That after the decease of Mary L Hanson * * * the plaintiff * * * entered into an oral agreement and agreed with the defendants to reduce to writing said agreement, to divide said $5750 or $5850, so invested in said Sioux Falls property, equally with the defendantsthat is, a one third to each upon the sale of the said Sioux Falls property. That said agreement in the nature of a Family Property Settlement, and Trust Agreement was, on June 30, 1947, reduced to writing and signed by said plaintiff * * *."
"(3) That on November 8, 1949 based on the said written agreement signed by Sylvia May Behrens, * * * and upon her final account and petition for distribution, and upon her other acts as Executrix, in accounting for the assets in the estate of Mary L Hanson, to the County Court, such Court in its Final Decree among other things, determined that the amount of $5750 was a part of the residue of the estate and distributed such in equal shares to the plaintiff and the defendantsthat is, 1/3 thereof to each in the following wording, to-wit:" (then follows the words of the final decree we have quoted supra.)
Predicated on its findings the circuit court entered conclusions as follows:
"(1) * * * Sylvia May Behrens is estopped and barred by her conduct and reports as Executrix, which were presented to and relied upon by the County Court, to claim that the investment by Mary L Hanson in the Sioux Falls property of $5750, * * * was not an asset of the estate of Mary L Hanson, deceased.
"(2) The plaintiff, Sylvia May Behrens, under her agreement with the defendants held the legal title to (description) in trust for the benefit of the plaintiff, Sylvia May Behrens, and the defendants, Florence L Baldenecker and Helen L Tolby, and the proceeds of such property now held in escrow, are impressed with the same trust.
"(3) The Final Decree dated November 8, 1949, in the probate proceedings of Mary L Hanson, deceased, * * * is res adjudicata and determined all issues sought by plaintiff to be re-litigated in her present action.
"(4) That the plaintiff's action to Quiet Title constitutes a collateral attack upon the said Final Decree * * * in the probate proceedings of Mary L Hanson, deceased * * *.
"(5) The Circuit Court is without jurisdiction of the subject matter and of the parties herein, except to dismiss the said action to Quiet Title * * * in that the County Court still has jurisdiction and full power under the law to require the plaintiff, Sylvia May Behrens to account and distribute to defendants, what they are entitled to by the terms of said Final Decree * * *."
The foregoing conclusions were reproduced in the judgment which dismissed the action to quiet title. On appeal to this court the circuit court was affirmed. Behrens v. Baldenecker, 76 S.D. 327, 77 N.W.2d 917.
Sylvia's supplemental account, now in question, was filed in the county court shortly after this court affirmed the judgment in the action to quiet title. In substance she thereby charges herself with the cash on hand as of the date of her final account, with the principal and interest *610 collected on the mortgage and contract for deed described in her final account, and with $5,750 described in the final decree as "Amount due from Sylvia May Behrens", and credits herself with the amount of her allowed creditor's claim, and fees as executrix, and with her disbursements.
The appealing objectors make two principal contentions; they assert the trial court erred (1) in failing to require the executrix to account for newly discovered income and assets, and (2) in making an insufficient surcharge of interest on assets withheld since the date of the final decree.
The jurisdiction of the county court, after the entry of its final decree and prior to the discharge of the executor, to require an accounting of newly discovered assets received by him and for which he has not accounted, is settled. Clauson v. Western Surety Co., 64 S.D. 106, 264 N.W. 726. Whether there was proof of added unaccounted assets and income is the issue.
The newly discovered assets and income which it is said Sylvia should account are alleged to arise from two separate sources, viz. from the renting and sale at a profit of the Sioux Falls residence, and the sale at a profit of an Omaha, Nebraska, property which Sylvia and her mother had formerly owned as joint tenants. The alleged sources require separate treatment.
As to the Sioux Falls property the objectors contend they and Sylvia became beneficial owners of an interest in that property, measured proportionately by their mother's contribution of $5,750 to its purchase price, and therefore, Sylvia is bound to account, not only for the $5,750 so contributed, but for a proportionate share of the rentals and income, and of the profit which arose from the sale thereof. As the foundation of this claim, they assert it was adjudicated between the parties in the action to quiet title that the three sisters were the owners of such a property interest in the Sioux Falls property.
On the other hand, predicated on SDC 35.1708 and In Re Smith's Estate, 76 S.D. 11, 71 N.W.2d 577, counsel for Sylvia assert that the objectors are bound by the final decree in the estate of Mary L. Hanson, to which they assented, and from which they failed to appeal, and therefore, according to the express terms of that decree, they only are entitled to share in the amount of $5,750 which became due to the estate from Sylvia when she sold the Sioux Falls property. Such counsel advance the further proposition that the findings, conclusions and judgment in the action to quiet title are without significance in this separate proceeding in county court, because the ultimate decision in that case was that the court was without jurisdiction, and a judgment of dismissal was accordingly entered.
Notwithstanding the fact that the action to quiet title resulted in a judgment of dismissal for lack of jurisdiction, if the findings, and conclusions entered therein would bear the interpretation placed thereon by the objectors, we would be confronted with the necessity of determining whether Sylvia is thereby estopped to claim the rights of the objectors to be limited by the final decree in the Mary L. Hanson estate to an interest in the obligation of Sylvia to pay the estate $5,750 from the money received from the sale of the Sioux Falls property. Cf. Annotation, 49 A.L.R.2d 1036, at page 1049. We are relieved of that necessity because we do not share the objectors' interpretation of the findings, conclusions and judgment in the action to quiet title.
As a basis of their claim of ownership of an undivided property interest in the Sioux Falls residence, the objectors stress the above quoted second conclusion of law of the circuit court in the action to quiet title to the effect that Sylvia held that property in trust for the benefit of the three sisters, and she now holds the sale proceeds impressed with a like trust. To understand this stressed conclusion, it must be read in the light of the record in that case, *611 and of the findings and conclusions as a whole. Throughout that proceeding Sylvia's sisters had contended the statement, quoted supra, which she had delivered to them subsequent to her mother's death was a "Family Property Settlement or Trust Agreement". The findings in the action to quiet title, after detailing the transactions and instruments including the oral understanding between the mother and Sylvia and the so-called family settlement and trust agreement, culminate in the ultimate finding "That * * * based on the said written agreement signed by Sylvia May Behrens * * * and upon her final account and petition for distribution * * * such Court in its Final Decree among other things, determined that the amount of $5750 was a part of the residue of the estate and distributed such in equal shares to the plaintiff and the defendants * *," and then in addition to the conclusion stressed by the objectors, the court concluded, "The Final Decree * * * in the probate proceedings of Mary L Hanson, deceased * * * is res adjudicata and determined all issues sought by plaintiff to be re-litigated in her present action."
As we read these findings and conclusions they hold that final decree in the estate of Mary L. Hanson measures the nature and extent of the beneficial interest of these objectors under the trust described in the stressed conclusion. In affirming the judgment in the action to quiet title, this court observed, "Throughout the probate proceedings and under the testimony in this case accepted by the trial court, plaintiff acknowledged that she was obligated to her mother because of this advance by her mother when the property was purchased. True, this obligation was described at places in the probate proceedings as being an interest in the real property, but as we interpret the final decree the property distributed by the county court was one-third to each of these defendants in $5,750 to be derived from the sale of this property." Behrens v. Baldenecker, 76 S.D. 327, at page 330, 77 N.W.2d 917, at page 918. We adhere to that interpretation of the final decree. Hence, it follows we are of the view that the contention of the objectors that the circuit court, in the action to quiet title, had adjudged them to be owners of a proportionate property interest in the Sioux Falls residence is not well founded.
We turn to the Omaha property. After the final decree Sylvia's sisters learned of the interest their mother had had in this property. It is described as a three-story structure arranged in separate apartments. The number of separate apartments is not stated. At the time the mother came to live with Sylvia she was operating that property as a rooming house, and was the owner of all of the furniture, furnishings and fixtures therein. She described the furniture as "beautiful" and testified that her investment therein exceeded $4,000. Subsequent to the arrival of her mother, Sylvia was notified by the owners they intended to put the building on the market. It was then that the mother advanced $5,750 or $5,850 and the property was purchased for about $6,000. Title was taken in the mother and Sylvia as joint tenants. Within three months the property, furniture and fixtures were sold for a lump sum of $10,500 and the Sioux Falls property, and its furniture and fixtures were purchased for $9,250. Sylvia testified that no profit was made in the sale of the Omaha real estate. The inference warranted from the evidence is that all which was received for the Omaha building was re-invested by the mother and Sylvia in the Sioux Falls building. Sylvia, as the surviving joint tenant, became the sole owner of that residence upon the death of her mother. Cf. Armstrong v. Hellwig, 70 S.D. 406, 18 N.W.2d 284.
In response to the contentions of the objectors that Sylvia should account for profits made in the sales of the Omaha and Sioux Falls properties, and for rents and income from the Sioux Falls property, the trier of fact found and concluded generally *612 that their evidence failed to establish additional assets or income since the entry of the final decree. For the reasons we have set forth, we hold it cannot be said that the trial court erred.
The remaining contention is that the account of the executrix should be surcharged with interest for the period she deprived the objectors of the use of money due them.
The relevant facts are largely undisputed. The residue described in the final decree entered on November 8, 1949, included cash on hand $304.37; balance due on Iowa real estate mortgage $2,203.74; balance due on Minnesota contract for deed $1,546.92; and amount due from Sylvia $5,750. There remained unpaid to Sylvia an allowed creditor's claim of $954 and fees as executrix $512.35. In addition some expenses incident to a foreign probate proceeding remained unpaid. By the last of 1951 Sylvia had collected the balance due on the Iowa mortgage and the Minnesota contract for deed and had discharged all obligations of the estate. However, she had not sold the Sioux Falls property and continued in residence there. She had made no remittances to her sisters. The situation remained unchanged and, as we have indicated supra, in September 1954 the sisters petitioned the county court for relief, and thereafter Sylvia started the action to quiet title to the Sioux Falls property against the claims of her sisters. While these described proceedings were pending the Sioux Falls property was sold. In connection with that sale each of the sisters was paid $750 and the balance as reduced by some expenses was placed on deposit with the Home Savings Association in the name of the three sisters, subject to the outcome of the action to quiet title. According to the arrangement this deposit was credited with dividend earnings of the Association.
The account as allowed and approved by the trial court includes a small amount of interest received by Sylvia on a savings account on October 2, 1951 and $350.27 representing dividends on the deposit with the Home Savings & Loan Association for the period from the date of the stipulation of the parties to the date of the findings.
In 30 Am.Jur., Interest, § 21, p. 19, it is written:
"As to whether an executor or administrator should be charged with interest on funds retained in his possession where the payment of a legacy or distributive share is delayed, there is no inflexible rule which the courts must follow. Ordinarily, in the absence of statutory requirement, interest is not chargeable as of course, or as a matter of right; liability therefor depends upon the circumstances, and is a matter in respect of which the trial court is invested with some discretion. It may be stated as a basic proposition that aside from any question as to the use or disposition of the funds in the meantime, the representative is chargeable with interest where, but only where, the delay was unnecessary or unreasonable or was otherwise due to some fault on his part. * * *" Cases are collected in 18 A.L.R.2d 1384.
It is our holding that facts no longer open to dispute convict Sylvia of a violation of her trust; she has, we are convinced, not only unreasonably, but intentionally withheld the distribution of funds due her sisters. In justice to them her account must be surcharged with interest at the legal rate during the periods of that delay.
Although funds remained in her hands after she had discharged all of the obligations of the estate in 1951 she made no payments to her sisters until March 31, 1955, when they each received $750 from the Home Savings Association. *613 Clearly for the funds so withheld she should be charged with interest from the date when she was able to discharge the estate's obligations with the funds then on hand.
Notwithstanding her obligation to pay her sisters two-thirds of $5,750 from the proceeds of the sale of the Sioux Falls property, she retained and occupied that property until 1955 and made no payment to her sisters. It is our view that neither the agreement with her sisters, nor the final decree in which it was incorporated, contemplated such a delay in the sale of that property. If she desired to await a more favorable market, or to retain that property, she should have otherwise arranged to discharge her obligation to her sisters. One year from the date of the final decree would have afforded her a reasonable time in which to negotiate a sale or to make financial arrangements to pay her sisters the agreed amount. To withhold their share of the agreed amount beyond that time while she continued to benefit from the use of the Sioux Falls residence was inequitable and unreasonable. A surcharge of interest on the share of her sisters should be made from that time until March 31, 1955 when by mutual consent the proceeds of the sale were invested for the benefit of the three sisters as their interest might be made to appear by the judgment of the court. Justice will be done if from March 31, 1955 the right of the sisters to share proportionately in the dividends arising from that investment is assured.
Other matters urged have been carefully reviewed but are deemed to be without merit.
Our order will be that the cause be remanded to permit the trial court to harmonize its judgment with the views herein expressed, and as so modified, the judgment is affirmed, but without costs to either party.
All the Judges concur.